433 So.2d 491 (1983)
ORLANDO EXECUTIVE PARK, INC., Petitioner,
v.
Patricia Dale ROBBINS, Respondent.
HOWARD JOHNSON CO., Petitioner,
v.
Patricia Dale ROBBINS, Respondent.
Nos. 61165, 61166.
Supreme Court of Florida.
March 31, 1983.
Rehearing Denied June 29, 1983.
*492 Ronald M. Owen of Parker, Johnson, Owen & McGuire, Orlando, for Orlando Executive Park, Inc., and Janet R. DeLaura of Smalbein, Eubank, Johnson, Rosier & Bussey, Rockledge, for Howard Johnson Co., petitioners.
Harry G. Carratt of Morgan, Carratt & O'Connor, Fort Lauderdale, for respondent.
McDONALD, Justice.
Both Orlando Executive Park, Inc., and the Howard Johnson Co. have petitioned for review of Orlando Executive Park, Inc. v. P.D.R., 402 So.2d 442 (Fla. 5th DCA 1981). We have jurisdiction, article V, section 3(b)(3), Florida Constitution, and approve the district court decision.
An unidentified man attacked Robbins while she was a registered guest at a Howard Johnson (HJ) Motor Lodge owned and operated by Orlando Executive Park, Inc. (OEP). Robbins sued for damages, claiming that HJ and OEP violated their legal duty to exercise reasonable care for her safety while she was a guest on the premises. The jury agreed and awarded her $750,000 compensatory damages against the defendants jointly and $500,000 punitive damages against each defendant separately. The trial court vacated verdicts for OEP and HJ on the punitive damages, but refused to grant their other post-trial motions. The district court of appeal affirmed the judgment, holding that the jury could properly find that OEP breached its duty of care and that liability could be extended to HJ under the doctrine of apparent agency.
OEP petitioned for review, which we granted on the basis of conflict with Winer v. Walo, Inc., 105 So.2d 376 (Fla. 3d DCA 1958). In Winer a motel guest slipped and fell on a wet terrazzo walkway. His expert witness, a local builder, testified as to the unsuitability of terrazzo for outdoor walkways because it becomes slippery when wet. The trial court directed a verdict for the defendant, finding that Winer had not *493 proved prima facie negligence. In affirming the directed verdict the district court commented that Winer had made "no showing that such terrazzo was not safe when measured by the general standard of building construction practice in the area." Id. at 378.
As its points on review, OEP claims that the district court erred as to the basis for expert testimony and as to imposing upon an innkeeper the duty to prevent a criminal assault. Upon further reflection we find no conflict with Winer regarding the first point, on which we based the exercise of our jurisdiction in granting OEP's petition. Because we have jurisdiction regarding HJ's petition for review, however, we will review the portion of the district court opinion discussing OEP's liability as well as that part concerning HJ.[*]
In the instant case Robbins' security expert testified that three guards should have been on round-the-clock duty at this 300-room motel. OEP's former security service had also suggested the necessity for three guards. Robbins' witness also testified, however, that no industry standards covering the instant situation existed. In Winer industry standards existed, but Winer failed to present them at trial. Here, industry standards did not exist, and we find no conflict with Winer.
We agree, however, with the district court's assessment of OEP's liability. In commenting on OEP's attack on the lack of standards the district court stated that the
absence of industry standards does not insulate the defendants from liability when there is credible evidence presented to the jury pointing to measures reasonably available to deter incidents of this kind, against which the jury can judge the reasonableness of the measures taken in this case.

402 So.2d at 447 (emphasis in original). In this case Robbins presented credible evidence, namely, that numerous episodes of criminal activity, of which the management had knowledge, had occurred during the immediately preceding six-month period and that the situation required the presence of security guards.
The district court properly characterized the question as one of foreseeability. Medina v. 187th Street Apartments, Ltd., 405 So.2d 485 (Fla. 3d DCA 1981); Holley v. Mt. Zion Terrace Apartments, Inc., 382 So.2d 98 (Fla. 3d DCA 1980); Rosier v. Gainesville Inns Associates, Ltd., 347 So.2d 1100 (Fla. 1st DCA 1977). An innkeeper owes the duty of reasonable care for the safety of his guests, Rosier, Phillips Petroleum Co. v. Dorn, 292 So.2d 429 (Fla. 4th DCA 1974), rev'd on other grounds, 347 So.2d 1057 (Fla. 4th DCA 1977), and it is "peculiarly a jury function to determine what precautions are reasonably required in the exercise of a particular duty of due care." Holley, 382 So.2d at 100-01. On the facts of this case the district court correctly stated that
the jury may consider competent evidence on the need or effect of any of these security measures or combination thereof in the context of the circumstances and evidence before it, in determining whether the innkeeper has met his duty of providing his guest with reasonable protection for his safety.
402 So.2d at 448. Credible evidence supported the jury's verdict, and we approve the portion of the district court opinion dealing with OEP's liability.
Turning to HJ, we granted its petition for review because of conflict between the instant district court opinion and Sydenham v. Santiago, 392 So.2d 357 (Fla. 4th DCA 1981), on the issue of apparent authority. In Sydenham a tire repaired at Santiago's Gulf Service Station exploded and injured the plaintiff. Sydenham sued both Santiago, who owned the station, and Gulf Oil Co., whose products Santiago sold. Relying on Cawthon v. Phillips Petroleum Co., 124 So.2d 517 *494 (Fla. 2d DCA 1960), the fourth district found Gulf not liable under an apparent agency theory because
[a]n oil company does not confer apparent authority, subjecting itself to vicarious liability for negligence, upon a retail service station by allowing the use of its trade name and selling its products to the station.
392 So.2d at 357-58.
The instant district court, on the other hand, stated:
While OEP might not be HJ's agent for all purposes, the signs, national advertising, uniformity of building design and color schemes allows the public to assume that this and other similar motor lodges are under the same ownership.
402 So.2d at 450 (footnote omitted). On the facts of this case the district court has set out the proper standard, limiting Sydenham and other oil company cases to their facts, and we disapprove extending the language of Sydenham into cases such as the instant one to the extent of conflict with this opinion.
As HJ concedes, the district court correctly set out the three elements needed to establish apparent agency: "(1) a representation by the principal; (2) reliance on that representation by a third person; and (3) a change of position by the third person in reliance upon such representation to his detriment." 402 So.2d at 449. The existence of an agency relationship is ordinarily a question to be determined by a jury in accordance with the evidence adduced at trial, Scott v. Sun Bank of Volusia County, 408 So.2d 591 (Fla. 5th DCA 1981); Cleveland Compania Maritima, S.A. Panama v. Logothetis, 378 So.2d 1336 (Fla. 2d DCA 1980); McCabe v. Howard, 281 So.2d 362 (Fla. 2d DCA 1973), and can be proved by facts and circumstances on a case-by-case basis. Sapp v. City of Tallahassee, 348 So.2d 363 (Fla. 1st DCA), cert. denied, 354 So.2d 985 (Fla. 1977).
As it did before the district court, HJ now claims that Robbins failed to present enough legally sufficient evidence tending to show the applicability of the doctrine of apparent agency to enable the case to go to the contrary. Robbins presented sufficient evidence to allow the jury to conclude that HJ represented to the public that it could find a certain level of service at this motel. Besides the evidence pointed out by the district court, we note that HJ, rather than OEP, operated the restaurant, lounge, and adult theater at the motel. The complex was an integrated commercial enterprise, and HJ's direct participation was significant. The district court also correctly pointed out the sufficiency of Robbin's evidence regarding her reliance on HJ.
We therefore approve the instant district court opinion.
It is so ordered.
ALDERMAN, C.J., and ADKINS, OVERTON and EHRLICH, JJ., concur.
BOYD, J., dissents with an opinion.
BOYD, Justice, dissenting.
I must respectfully dissent because there is no evidence that the defendants' negligence actually contributed to causing the plaintiff's injuries. That is to say that even if the defendants had provided the security precautions which plaintiff's expert witness testified were needed, there was no evidence that such additional precautions might have deterred or prevented this particular crime. Indeed the record affirmatively shows that such additional security precautions would not have prevented the plaintiff from being assaulted. Without any proof that the defendants' negligence did in fact cause the plaintiff's injuries, the defendants should not be held liable.
One of the essential elements of a plaintiff's cause of action in negligence is that there be a reasonable connection between the defendant's act or omission and the plaintiff's damages. This connection is usually termed proximate cause. There are two main aspects of proximate cause  foreseeability and causation in fact. W. Prosser, Law of Torts, § 41 (4th ed. 1971). The *495 district court of appeal and the majority of this Court have limited their review of this case to the narrow issue of foreseeability without considering the issue of whether there was causation in fact. The concept of foreseeability is used by the courts to determine whether as a matter of social policy a defendant should be held liable for a plaintiff's damages. Id.
The courts of this state have established as a social policy that an innkeeper may be liable for damages a guest incurs as a result of a criminal assault. Rosier v. Gainsville Inns Associated, Ltd., 347 So.2d 1100 (Fla. 1st DCA 1977); Phillips Petroleum Co. v. Dorn, 292 So.2d 429 (Fla. 4th DCA 1974). However, before such liability can be imposed, there must be a causal connection between the innkeeper's duty to provide reasonable security precautions and the actual damages that a guest incurs. In determining whether there is a causal connection between a defendant's negligence and a plaintiff's damages, the "courts have derived a rule, commonly known as the `but for' or `sine qua non' rule, which may be stated as follows: The defendant's conduct is not a cause of the event, if the event would have occurred without it." Prosser, supra. Not only must there be a causal connection, but the plaintiff must also prove it.
On the issue of the fact of causation, as on other issues essential to his cause of action for negligence, the plaintiff, in general, has the burden of proof. He must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.
Id. (footnotes omitted).
The sine qua non of a negligence action is an actual causal connection between the negligent act and the injury. More easily defined than applied, the concept of proximate cause can be quite difficult. Incapable of precise proof as it sometimes may be in a given case, it must be shown by competent proof to be a "material and substantial factor in bringing it [the injury] about."
Asgrow-Kilgore Co. v. Mulford Hickerson Corp., 301 So.2d 441, 444 (Fla. 1974) (quoting Loftin v. Wilson, 67 So.2d 185, 191 (Fla. 1953)).
In this case the plaintiff failed to present any evidence, much less competent proof, that the defendants' failure to provide three security guards instead of one was a substantial factor in bringing her injury about. The plaintiff's expert witness was never asked during direct examination to opine whether the presence of additional security guards would have more likely than not prevented the plaintiff from being assaulted. His failure to draw any connection between his security proposals and this particular assault was brought out during cross-examination.
Q. You are not testifying here today that your proposals, your hypothetical proposals would have in any way affected or prevented the assault on Mrs. Robbins, are you?
A. No.
Not only did the plaintiff fail to present any evidence of any actual causal connection between the defendants' negligence and her injury, but the evidence that she did present tended to show there was no causal connection. The plaintiff testified that when she registered, the people at the desk told her she could park in the lot which was adjacent to and could be seen from the office. She testified that after taking her luggage to her room she returned to her car for some papers. She said that while she was at the car she saw a man standing by the office. As she walked back to her room, she saw the same man again looking, she supposed, for an ice machine. The man came up and assaulted her when she was two doors from her room. On cross-examination she testified that the man was neatly dressed and well groomed. Before the assault she did not find anything suspicious *496 about his appearance or behavior. The guard who was on security duty that night testified that he did not see any suspicious characters. He also stated that he had walked through and around the building containing the plaintiff's room not more than fifteen minutes prior to the assault. The guard said that after touring the grounds, he got in his car. He noticed the plaintiff by her car as he drove by and parked in a location where he could observe most of the premises. Despite his vantage point, he did not become aware of any criminal activity until the sheriff's deputies drove into the parking lot with their lights flashing about twenty minutes later.
From these facts I conclude that the assailant probably would not have been deterred or prevented from attacking the plaintiff by the presence of two additional security guards. For under the security system proposed by the plaintiff's expert, the two additional security guards would have been patrolling other buildings at the time the assault occurred. Since there was no reasonable way the defendants could have prevented or deterred this particular crime, they should not be held liable. See Reichenbach v. Days Inn of America, Inc., 401 So.2d 1366, 1367 (Fla. 5th DCA 1981) (Cowart, J., concurring), review denied, 412 So.2d 469 (Fla. 1982). I would therefore reverse and remand with instructions that a directed verdict be granted in defendants' favor.
NOTES
[*] Robbins also petitioned for discretionary review of the district court opinion. She now raises the identical points in a cross petition filed in the instant cases. We could find no constitutional basis permitting review of her claims when she petitioned for review, and we decline to address these issues now.